UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dashelle Dodson, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 16 CV 0345 |
| v. | ) |
| | ) The Honorable Joan B. Gottschall |
| Cook County Jail, et al., | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This litigation stems from plaintiff Dashelle Dodson's alleged three-day stay as a pretrial detainee in Division Three of the Cook County Jail (CCJ in January 2016). Dodson initially filed a pro se complaint, ECF No. 1, which the court screened, see 28 U.S.C. § 1915(e)(2), and dismissed for failure to state a claim. ECF No. 6 at 4. The court also recruited counsel to assist Dodson in amending her complaint. Most of the defendants (collectively "defendants" for ease of reference) move to dismiss Dodson's Second Amended Complaint (SAC) for failure to state a claim upon which relief can be granted.

Because it is brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants' motion "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012); *accord. Randle v. Bentsen*, 19 F.3d 371, 373 (7th Cir. 1994). A complaint need only set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted Rule 8(b)(2) to mean that a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). When deciding a motion to dismiss, the court takes all

facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). Dodson alleges as follows in the SAC. Her immune system was seriously compromised when she was arrested on January 2, 2016, for alleged traffic-related offenses; she had been diagnosed with bilateral lung base atypical pneumonia, acute bronchitis, and epigastric abdominal pain. ¶1–3,18. Despite her condition, which manifested physical symptoms, Dodson was placed in a Division Three cell where she was exposed to mold, dust, mildew, contaminated drinking water, and other toxins. SAC ¶¶ 3, 4, 19, 21. On the last day of Dodson's stay in the CCJ, January 5, 2016, she was also exposed to pepper spray used by defendant T. Williams ("Williams"), a corrections officer, on other inmates. SAC ¶2, 11, 26. Dodson's exposure made her medical conditions worse, made her cough painfully while she was at the CCJ, caused her "great bodily harm," and caused her to be later diagnosed with asthma. SAC ¶ 24, 28.

## I. Exhaustion of Administrative Remedies

Defendants first urge the court to dismiss this action under the Prison Litigation Reform Act (PLRA). The SAC does not mention exhaustion of administrative remedies, but it does not need to. The Supreme Court has held that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007). Under *Jones*, the SAC's failure to demonstrate exhaustion required by the PLRA does not justify dismissing it for failure to state a claim.

Whether § 1997(a)'s exhaustion requirement applies turns on whether Dodson was a prisoner when her pro se complaint was filed. The SAC alleges that she had been released from

the CCJ when she filed suit. Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. Section 1983], or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA defines the term "prisoner" used in § 1997 as "any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." § 1997e(h). The Seventh Circuit interpreted the PLRA's definition of prisoner" in *Kerr v. Puckett*,[1] 138 F.3d 321, 323–24 (1998), holding that "[t]he statutory language does not leave wriggle room . . . . this term does not comprehend a felon who has been released," id. at 324; see also *Witzke v. Femal*, 376 F.3d 744, 750 (7th Cir. 2004) ("In determining whether a plaintiff is a "prisoner confined in jail," we must look to the status of the plaintiff at the time he brings his suit." (citing *Kerr*)); *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002) (same). Like Kerr, Dodson avoided the requirements of § 1997e "by waiting until [her] release from prison" to file suit. *Kerr*, 138 F.3d at 324. Under this rule, the date of release alleged in the SAC and its filing date show that § 1997e(A)'s exhaustion requirement did not apply to Dodson.

There is, therefore, no need to convert defendant's motion to one for summary judgment. Defendants attached the affidavit of a CCJ official to their motion to dismiss. ECF No. 61-1. The affidavit is not "part of the pleadings, as it is not referred to in the plaintiff's complaint," so the court cannot consider it without converting defendant's motion to one for summary judgment. *Rutherford v. Judge & Dolph Ltd.*, 707 F.3d 710, 713 (7th Cir. 2013) (quoting *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir.2002)) and Fed. R. Civ. P. 12(d)).

---

[1] The parties did not cite *Kerr* or other Seventh Circuit authority on the statutory question here. *Kerr* is cited in *Page v. Torrey*, 201 F.3d 1136, 1139 (9th Cir. 2000), which plaintiff cites on page seven of her response.

(alterations omitted). The court will not convert defendant's motion because the affidavit would not even arguably change the PLRA analysis. Defendants bear the burden to "show beyond dispute that [administrative] remedies were available" to Dodson. *Ramirez v. Young*, 906 F.3d 530, 534 (7th Cir. 2018) (citing *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016)). The affidavit states that a search of CCJ records found no grievance filed by Dodson during her stay. ECF No. 61-1 at 1. Because the affidavit says nothing about whether Dodson was a prisoner on January 12, 2016, it does not alter the PLRA analysis. See id. The motion to dismiss the SAC for failure to exhaust administrative remedies is denied.

## II. Due Process Claims

Dodson pleads two Eighth Amendment claims against the individual defendants: one for their individual actions and one premised on their execution of official policy. As all parties recognize, the state cannot punish pretrial detainees at all because they are presumed innocent, so Dodson's constitutional rights derive from the Fourteenth Amendment's due process clause. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); see also *Beaton v. Speedy PC Software*, 907 F.3d 1018, 1023–24 (7th Cir. 2018) (citations omitted) ( "plaintiffs do not need to plead legal theories" in complaints (citing *Johnson v. City of Shelby*, 135 S. Ct. 346, 346–47 (2014) (per curiam)) (other citations omitted)). "[T]he proper inquiry" when evaluating conditions faced by a pretrial detainee "is whether those conditions amount to punishment of the detainee." Id. at 535. Under the Eighth and Fourteenth Amendments, "the alleged conditions must be objectively serious enough to amount to a constitutional deprivation . . . ." *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (citing *Sain v. Wood*, 512 F.3d 886, 893–94 (7th Cir. 2008)) (other citations omitted). The denial of a "basic human need . . . such as 'adequate food, clothing, shelter, and medical care'" rises to this level. Id. (internal citation omitted; quoting *Farmer v. Brennan*, 511 U.S. 825, 832

4

(1994)). As framed in her briefing, Dodson's claims fall into three distinct legal categories: (1) denial of adequate medical care for Dodson's diagnosed conditions, (2) defendant Williams' alleged use of mace in Dodson's vicinity and (3) the physical conditions of the CCJ.

## A. Medical Care

Dodson alleges that she should have been placed in the infirmary due to her diagnosed medical conditions, but the defendants who evaluated her at intake put her in the prison population despite her []physical symptoms and ailments." SAC ¶¶ 19–20. Not all medical conditions faced by incarcerated persons give rise to a constitutional claim. Before *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015), the Seventh Circuit had held that conditions of confinement claims "brought under the Fourteenth Amendment are appropriately analyzed under the Eighth Amendment [deliberate-indifference] test." Smith, 803 F.3d at 310 (collecting cases).

The governing standard changed in the Seventh Circuit with *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018), which held that "medical-care claims brought by pretrial detainees under the Fourteenth Amendment are subject only to the objective unreasonableness inquiry identified in *Kingsley*." The Seventh Circuit subsequently described the objective unreasonableness analysis as follows:

> After *Miranda*, then, the controlling inquiry for assessing a due process challenge to a pretrial detainee's medical care proceeds in two steps. The first step, which focuses on the intentionality of the individual defendant's conduct, remains unchanged and "asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of plaintiff's case." *Miranda*, 900 F.3d at 353. A showing of negligence or even gross negligence will not suffice. See id.; accord *Darnell v. Pineiro*, 849 F.3d 17, 35–36 (2d Cir. 2017) (concluding that "[a]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence").
>
> At the second step, and now aligned with *Kingsley*, we ask whether the challenged conduct was objectively reasonable. See *Miranda*, 900 F.3d at 354. This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without

5

> regard to any subjective belief held by the individual—whether the response was reasonable.

*McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018) (alterations in original; first citation to *Miranda* added). The parties discuss *Miranda* and *McCann* in their briefing, but the court addresses their effect on the medical care claims under the heading of personal involvement.

Dodson has adequately alleged an objectively serious medical condition. After *Miranda*, Dodson must still adequately allege that she was suffering from an "objectively, sufficiently serious" medical condition. *Townsend v. Cooper*, 759 F.3d 678, 689 (7th Cir. 2014) (quoting *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir.2005)) (prisoner; Eighth Amendment); see also *Miranda*, 900 F.3d 335, 347 (7th Cir. 2018) (noting that the defendants conceded that a pretrial detainee's condition was objectively serious). The SAC alleges that Dodson had been diagnosed with and suffered from acute bronchitis and bilateral (both lungs) pneumonia when she was booked into the CCJ. SAC ¶¶ 2, 18 (also alleging acute epigastric abdominal pain). Pneumonia has been recognized to be an objectively serious medical condition in appropriate circumstances. See *Thomas v. Sheahan*, 499 F.Supp.2d 1062, 1090–91 (N.D. Ill. 2007) (distinguishing *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir.1996)). At this early stage, Dodson has adequately alleged that she suffered from at least one objectively serious medical condition.

**B. Personal Involvement**

The two defendants who allegedly were responsible for Dodson's evaluation and placement (Killgore and Altez) have answered the complaint. Defendants Dart and Currie, respectively the Cook County Sheriff and the Warden of the CCJ, seek dismissal on personal involvement grounds. As they argue, the SAC does not mention that either of these defendants observed the conditions Dodson faced during her stay or that they were otherwise involved in managing her case. Nevertheless, with inferences in Dodson's favor, the SAC alleges systemic

conditions in Division Three of which Dart and Currie may reasonably be expected to have been aware.

The SAC is similar in relevant respects to the pro se complaint in *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996). There, the Seventh Circuit distinguished between localized and systemic jail conditions when analyzing the complaint of a pro se CCJ inmate against, among others, the Cook County Sheriff and CCJ director. Without more in the complaint demonstrating personal involvement, the court held, claims premised on localized conditions such as confiscating the plaintiffs' property and not allowing him to attend religious services had to be dismissed. Id. at 1428. Here, too, Dodson alleges nothing that would give rise to an inference that defendants Dart and Currie were personally involved or had knowledge of her medical care or the mace incident. See id. On the other hand, the plaintiffs' allegations of "systemic violations for which the Sheriff and the Director can be expected to have personal responsibility," survive the pleading stage. *Id.* The surviving allegations included a claim similar to the conditions Dodson alleges, specifically that the plaintiff's living unit was infested with rats. id. at 1427; see also *Sanders v. Sheahann*, 198 F.3d 626, 629 (7th Cir. 1999) (unpublished) ("defendants such as the Sheriff and the Director of the Jail can realistically be expected to know about or participate in creating systematic jail conditions"). In keeping with these principles, courts in this district have refused to dismiss claims against these defendants brought by plaintiffs who allege that they were exposed to mold, mildew, and fungus in the CCJ. *E.g.*, *Burton v. Dart*, 2015 WL 5175143, at *1, 3 (N.D. Ill. Sept. 3, 2015) see also *Towns v. Dart*, 2017 WL 4572209, at *4 (N.D. Ill. Oct. 13, 2017) (denying summary judgment based on *Antonelli*).

Like the complaints in *Antonelli*, *Sanders*, and *Burton*, the SAC alleges conditions in Division Three of which defendants Dart and Currie would be expected to be aware. SAC ¶ 15. Indeed, the SAC states a more plausible claim than in *Antonelli* because it alleges that a 2008 report issued by the U.S. Department of Justice made defendants aware of the dangers posed by "the contaminated water, mold, mildew, chipping paint and deteriorating pipes." SAC 10. Reports of the federal monitor appointed in *United States v. Cook County*, No. C 2946 (N.D. Ill.), have been found to be admissible to show that CCJ officials had knowledge of those conditions. *Towns*, 2017 WL 4572209, at *4–5 (citing *Thompson v. Taylor*, 2016 WL 5080484, at * 9 (N.D. Ill. Sept. 20, 2016)). The alleged report further bolsters the plausibility of Dodson's allegations.

Accordingly, defendants Dart and Currie's motion to dismiss on personal involvement grounds is denied. The court dismisses Dodson's claims against Dart and Currie to the extent she seeks to hold them liable based on the mace incident and the medical care she received.

**C. Excessive Force Claim Against Williams**

The parties separately analyze Dodson's excessive force claim against defendant Williams; this claim is premised on Williams' alleged use of mace against other prisoners. SAC ¶¶ 11, 26–27. Under the Fourteenth Amendment, an officer's use of force is excessive where it "amounts to punishment," is "not 'rationally related to a legitimate governmental purpose,' or 'appear[s] excessive in relation to that purpose'" when viewed objectively. *Kingsley, 135 S. Ct. at 2473* (quoting *Bell v. Wolfish,* 441 U.S. 520, 538-41 (1979)). The determination of whether force is reasonable is informed by "[c]onsiderations such as the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at

issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id.; see also *Soto v. Dickey,* 744 F.2d 1260, 1270 (7th Cir. 1984) (applying this standard to prison guards' use of mace and pepper spray).

Defendants rely on two cases dismissing complaints filed by prisoners. First, in *Young v. Breeding*, 929 F. Supp. 1103(N.D. Ill. 1996), the complaint stated that the plaintiff, a prisoner, began having an asthma attack. Id. at 1105. After calling for help, his cell mate tried to get the attention of one guard by throwing coffee on him. Id. Prison guards sprayed mace through the slot on the door, which made Young's asthma attack worse. Id. Applying the Eighth Amendment deliberate indifference standard, the court dismissed Young's complaint, observing that the plaintiff did "not dispute that [the] use [of mace] was intended to subdue [the cell mate], and not 'for the very purpose of causing him harm.'" Id. at 1007 (quoting *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)) (brackets omitted).

The second case applied the deliberate indifference standard to the pro se complaint of a prisoner who was maced by a prison guard. *Ward v. Hoffman*, 2014 WL 2442657, at *1, 3 (S.D. Ill. May 30, 2014). The pro se complaint stated that the guards should have known of the plaintiff's diagnosed chronic asthma based on medical records transferred from another prison. Id. at *1. The complaint did not say that any defendant actually knew that the plaintiff suffered from asthma, and the inference that they knew what his medical records contained was implausible because no defendant was on the prison's medical staff. Id. at *3. Without any description in the complaint of what led to the use of mace, the court could not fully analyze the excessive force claim and dismissed it. *See id.*

To the extent that *Young* and *Ward* took into account the guards' subjective intent when they deployed mace, *Kingsley*, *supra*, requires a different inquiry for excessive force claims

9

brought by pretrial detainees. After *Kingsley*, to establish that a given use of force was excessive, a pretrial detainee need prove only that the use of force was objectively unreasonable; "the defendant's state of mind is not a matter that a plaintiff is required to prove." *Kingsley*, 135 S. Ct. at 2472. Nevertheless, as is the case for other excessive force claims, what the defendant subjectively knew at the time force was used has a part to play, for the objective analysis must be conducted "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. at 2473 (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Under *Kingsley*, then, as was the case in *Ward*, the complaint does not state a claim of the use of objectively unreasonable force where the complaint neither describes the events leading to the use of force nor alleges facts giving rise to a plausible inference that the defendant knew, or had reason to know, of the plaintiff's medical condition.

Before considering objective unreasonableness, the first *Kingsley* inquiry must be undertaken. "[A]s to the series of events that have taken place in the world, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind." *Kingsley*, 135 S. Ct. at 2473 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)) (emphasis and other citation omitted). Under this standard, a prison guard who trips and falls on a detainee cannot be held liable because the guard did not purposefully bring about the series of events that led to the physical contact with the detainee. Id. Analogously, if defendant Williams accidentally maced Dodson, Her claim would fail. Viewed favorably to Dodson, the SAC alleges that Williams deployed pepper spray knowing that it was capable of delivering a chemical agent to "individuals in the area," including Dodson. SAC ¶ 11. Although the SAC states that Williams was targeting another prisoner, ¶ 26, Dodson sufficiently alleges that Williams possessed a knowing mental state; Williams knew the mace would make contact with Dodson.

But the SAC does not state a plausible claim of objectively unreasonable conduct on Williams' part. Dodson alleges that Williams used mace in "reckless disregard" of Dodson's medical condition, but it does not explain how Williams knew or should have known of Dodson's condition. See SAC ¶ 26–27. As already stated, the objective unreasonableness inquiry is conducted from Williams' point of view at the time force was used. *Kingsley*, 135 S. Ct. at 2473. Dodson does not allege that she had any prior contact with Williams, that she was having difficulty breathing, or that she exhibited other obvious symptoms of distress. See SAC ¶¶ 26–27; cf. *Sherrod v. Lingle.*, 223 F.3d 605, 610–11 (7th Cir. 2000) (defendants evidence permitted jury to find that medical defendants "knew" the plaintiff faced a "risk of appendicitis"). On the facts alleged in the SAC, Williams had no reason to know of Dodson's medical conditions on January 5, 2016. See *Williams v. Rodriguez*, 509 F.3d 392, 402 (7th Cir. 2007); *Daniels v. Harper*, 640 F. App'x 519, 521 (7th Cir. 2016). Similar to the plaintiff in *Ward*, Dodson attempts to show that Williams knew of her condition by pointing to jail records created at Dodson's intake. See Resp. to Mot. to Dismiss SAC 4–5; SAC ¶ 20. As in *Ward*, Dodson raises no plausible inference that Williams should have known of those records or her condition. Without that inference or any details that would allow a plausible inference that Williams' use of mace was objectively unreasonable, Dodson's claims against Williams must be dismissed.

**D. Physical Conditions of Confinement**

Prior to *Miranda*, it was well settled in the Seventh Circuit that the court should "look to Eighth Amendment case law in addressing the [conditions of confinement] claims of pretrial detainees, given that the protections of the Fourteenth Amendment's due process clause are at least as broad as those that the Eighth Amendment affords." *Rice ex rel. Rice v. Correctional*

*Med. Servs.*, 675 F.3d 650, 664 (7th Cir. 2012) (collecting cases). The Seventh Circuit decided *Miranda* while the parties were briefing the instant motion. Plaintiff filed a post-response notice of supplemental authority advising the court of *Miranda*, ECF No. 75, and defendants made arguments about *Miranda* in their reply, see ECF No. 76 at 2. Nonetheless, how, if at all, *Miranda* affects the standard for non-medical conditions claims of pretrial detainees is not properly before the court because the issue is addressed for the first time in defendants' reply. Since the SAC satisfies the Eighth Amendment standards, the court need not reach that issue in any event.

When evaluating conditions of confinement under the Fourteenth Amendment, the "courts 'weigh[ ] the individual's interest in liberty against the State's asserted reason' for their restraint." *Youngberg v. Romeo*, 457 U.S. 317, 320(1982). Punishment in the constitutional sense requires something more than routine discomfort. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). As this court stated when it screened Dodson's pro se complaint, punishment generally requires allegations of extreme deprivations over an extended period of time. *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992); *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). Establishing a constitutional violation about adverse conditions requires a plaintiff to demonstrate both an objectively serious condition and deliberate indifference to that condition. *Sam v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (emphasis added). Deliberate indifference requires that a defendant both knew of the adverse condition and refused to take reasonable steps to address it. Id.; see also *Smith v. Dart*, 803 F.3d 304, 310 n.2 (7th Cir. 2015) ("an inmate must 'prove that the defendant' possess[ed] a purposeful, a knowing, or possibly a reckless state of mind") (citations omitted).

The court has already explained why the SAC states a claim that defendants Dart and Currie can be expected to know of the alleged physical conditions in Division Three. Only the question of whether the SAC states a plausible claim of deliberate indifference to an objectively serious condition amounting to punishment prohibited by the Fourteenth Amendment remains.

Defendants cite two cases holding that discrete prison conditions did not rise to the level of a constitutional violation. Neither is on point.

*Carroll v. DeTella*, 255 F.3d 470, 472–73 (7th Cir. 2001) concerned polluted drinking water at a prison and was resolved at summary judgment. After discussing the governing principles, the *Carroll* court held that on the case's facts "[i]t would be inconsistent . . . . to impose upon prisons in the name of the Constitution a duty to take remedial measures against pollution or other contamination that the agencies responsible for the control of these hazards do not think require remedial measures." Id. at 472–73. The SAC here says nothing about the level of pollution in the CCJ's water or what, if anything, regulators had to say about it. The SAC does allege that the dangers posed by the water are recounted in the 2008 report. SAC ¶¶ 45, 49. If it provides any guidance, *Carroll* suggests that summary judgment may be a better stage at which to test Dodson's claims.

As for *Wade v. Haida*, 2013 WL 4505990 (S.D. Ill. Jan. 29, 2013) (dismissed a prisoner's claim that he was provided only cold water in his cell. The court cited the rule that "unpleasant conditions that do not result in physical harm do not rise to the level of an Eighth Amendment violation." Id. at *6 (citing *Harris v. Fleming*, 839 F.2d 1232, 1235–36 (7th Cir. 1988)). By way of contrast, Dodson alleges that the conditions caused her to cough and wheeze "continuously resulting in pain when she tried to breathe" and that the conditions at the CCJ exacerbated her existing medical problems and caused her to become asthmatic. SAC ¶ 25.

13

By isolating Dodson's claims about water quality, defendants focus on one thread in the tapestry of adverse conditions Dodson alleges.  "The whole is sometimes greater than the sum of the parts: the cumulative effect of the indignities, deprivations, and constraints to which inmates are subjected determines whether they are receiving cruel and unusual punishment." *Bruscino v. Carlson*, 854 F.2d 162, 166 (7th Cir. 1988) (citing *French v. Owens*, 777 F.2d 1250, 1252 (7th Cir. 1985)).  As defendants cite no other authority on this issue and fail to analyze the cumulative effects of the conditions alleged in the SAC, the court concludes that, taken cumulatively and in the light most favorable to Dodson, the SAC adequately alleges a constitutional deprivation based on the physical conditions of Dodson's confinement.

## III. Conclusion

For the reasons stated, the motion to dismiss the SAC, ECF No 60, is granted in part and denied in part.  The claim alleged in the Second Amended Complaint against Defendant T. Williams is dismissed.  The following claims against defendants Dart and Currie are dismissed: (1) claims based on the provision of medical care and (2) claims based on the alleged January 5, 2016, incident involving the use of mace.

ENTERED:

/s/
Joan B. Gottschall
United States District Judge

Dated:  February 21, 2019